Mr. Wise, we'd be pleased to hear from you. Good morning. May it please the Court, my name is Rob Wise and I represent Ryobi Technologies, Inc. This is a relatively simple case, certainly I hope more simple than one or two ago, but the issues here are important as they go to issues of fundamental error in the trial proceedings below. It is fundamental that parties are not held liable for products that they have nothing to do with. And it is fundamental that when parties are brought into court, rightly or wrongly, that they receive a fair trial. This judgment violated both of those fundamental tenets. Now time does not permit a detailed discussion of the errors that we recited in our brief and we'll rely on that for our arguments, but I'd hope to focus on two main issues today. The first is that the plaintiff sued the wrong party. The plaintiff never sued the manufacturer of this product. Instead, the plaintiff sued an entity that had nothing to do with this law. Was it manufactured under contract with Ryobi? That is the plaintiff's argument with absolutely no evidentiary support whatsoever. It is not accurate. Did we have a contract? There is no contract. They refer several times in their brief to either a contract-manufacturer relationship, a business agreement, an arrangement with Ryobi. Did you ask for the contract? Did we ask for it? These are arguments that came up post-trial. We're not aware of any contract. There is no contract. They never produced a contract. And there is affirmative evidence from an affidavit testimony. And how did you bring to the attention of the district court that they were suing the wrong party? That was very early, and the plaintiff conceded that as well, early in the proceedings. We made known with our answer and with our answers to interrogatories that Ryobi Technologies had no involvement with this tractor. We provided a sworn affidavit in August of 2014, before this trial several months later, that Ryobi Technologies had no involvement in the design, sale, manufacture of this tractor. During proceedings before Magistrate Judge Miller, it was conceded and the plaintiff acknowledged and said, quote, there is no dispute that this Ryobi tractor was manufactured by Husqvarna at page 75 of the appendix. Magistrate Judge Miller then went on to comment that they had known for many months. That is who manufactured it, right? Excuse me? Husqvarna. Is that how you pronounce that? Husqvarna. Yes, Your Honor. That's who manufactured it? Yes, Your Honor. I want to make sure I clarify on that point, because the plaintiff received in 2005, with the purchase of this tractor, an owner's manual. That owner's manual... The owner's... And the label on the tractor said Ryobi. It says simply Ryobi. It never says anywhere on the tractor, the owner's manual or anything else, Ryobi Technologies. The owner's manual said Ryobi and it was sold at the Home Depot. Yes, it said Ryobi Trademark next to it. And the receipt said Ryobi? The receipt printed by Home Depot says Ryobi. So the district court said that, well, that's enough, under the apparent manufacturer doctrine, right? And made a finding that a reasonable juror could find that Ryobi had put this out as its own product, right? So as far as the district court was concerned, at least it didn't really matter who manufactured it under this apparent manufacturer doctrine. So what's wrong with that? Because it's not the apparent manufacturer doctrine. The apparent manufacturer doctrine has two prongs, going back to the Carney and then the Swift case. But first of those prongs is one who puts out a product. And as the comments explain, and other cases also explain, you need to put out the product. You need to be the vendor, the distributor, somewhere in the chain of... I've found cases going both ways on that from different states. And so I'm trying to figure out, like, where is it clear that how Virginia construes that doctrine? Because the cases from this court, Carney and Swift, talk specifically about that prong in terms of putting it out. But it's a state law issue, isn't it? As interpreted by the Fourth Circuit. There's no... Well, but that way they interpreted it. You're talking about the Swift case, 1936. Yes. That's before Erie v. Tompkins. And then there's also... So it's got to be a question of, what, Virginia law? Yes. And that's what both those cases were saying, is that Virginia would adopt it. But both of those cases, you are right, that they involved retailers. But I couldn't find any language in either of those cases, and they're both pretty old, too, saying, and we would limit the apparent doctrine, I'm sorry, the apparent manufacturer doctrine in this way. And it seems to me, I mean, nobody really briefed this, but my able law clerk looked it up, and it looks to me like there's a split, that states go both ways on this question when they address it. So my question for you is, is there anything in Virginia law that tells us which way Virginia would come out on this question? There is not. Virginia has not addressed this issue. However, that would be a departure, submit from the apparent manufacturer doctrine as interpreted by the majority of the courts. We've got a citation... Well, in what severity did you do a... I mean, you didn't brief this. Is there something... Yes, we've got... You've got like a 50-page survey somewhere? I could refer it during the reply portion, if I may, rebuttal portion. We cite in our brief to one of the case courts that did look at that from multiple jurisdictions and said that that's the standard they look at, is somebody involved, this doctrine is almost always applied. I totally agree with you. Some courts do that. But then some courts have said, no, we're not going to do that. It's enough that you put yourself out there that a member of the public could reasonably draw this conclusion. And we have to figure out what Virginia is going to do. And I don't think there's a real clear consensus in the courts. So do you have any advice for us on how we might figure out what Virginia would do? I'd certainly be willing to submit a... There is a 50-state survey, but a survey as exhaustive as could be made of this, if that's something that is continuing to trouble, Your Honor. Is that how we decide? Do we sort of count up the states and then assume that Virginia would go with a majority? No, I think the court can also look to the apparent manufacturer doctrine in all of its components. How was the jury instructed on this question? The jury was not instructed on this question, Your Honor. The plaintiff did not make this... This was not part of their case. This was not in the complaint. Nowhere did they plead that they were suing these entities under the apparent manufacturer doctrine. Judge Jackson says, or said, that there's sufficient evidence in the record to support the jury's finding that Ryobi Technologies, Inc. put the Ryobi tractor out as its own and is therefore subject to liability under Virginia law. The jury was never asked... He said it was Virginia law, and he said there was sufficient evidence, and that there was a jury finding. And if you didn't instruct the jury, then you can't come up here complaining, can you? I believe we can come up here complaining. Well, how come you didn't offer an instruction? Because we've moved for summary judgment that we were not... You can move for summary judgment all you want, but then you went to trial. You got to get the... You had to give the jury a fair shot or try to get a shot at what your theory was, and if you didn't offer your theory to the jury in the way of an instruction, why wouldn't you waive it? Because this is not our theory. It's the plaintiff's theory. They sued... Well, you have a theory of the case that you didn't propose. Respectfully, no. The plaintiff sued alleging... You offered instruction on your proposition of what the law was in Virginia, the applicable law, whatever it's called, on the apparent manufacturer doctrine, and tried to get the jury to make a finding in your favor as a result of it. Did you offer one? No jury instruction was offered on that issue. No jury instruction was offered. Yes, Your Honor. I would submit that this... And Judge Jackson says the jury found, and he said there was sufficient evidence. There was no jury finding specifically. It was simply... It was a general verdict form. Well, you have to take... At this point, when there's a general verdict, we look at the whole thing. We look at the jury evidence and everything, and the light most favorable to the prevailing party. Yes, Your Honor. And here... We don't give a part jury verdict. Here, under Virginia law... Then that... Under that light. Did you argue before the jury that Ryobi was not the manufacturer? It was explained to the jury that Ryobi was not the manufacturer and that Husqvarna was the manufacturer. I'm not talking about explained to the jury. Did you argue before the... Did counsel argue before the jury that Ryobi was not the manufacturer? I believe... I don't know if that was specifically said they're not the manufacturer. They explained who was the manufacturer and that it was Husqvarna. That was in the evidence? That was... No. The evidence was that Ryobi was a brand name used by Home Depot. There was no evidence whatsoever of... But there was no evidence that Husqvarna was manufacturing the thing? No. I believe that was a stipulation, Your Honor. Did you stipulate? Well, that's evidence. Stipulations are evidence. They're binding evidence. Yes. If you all agree, that's binding on the jury. It was stated that Husqvarna was the main... In fact, Husqvarna is defending this case. Excuse me? Husqvarna is defending this case. They did provide the defense. Yes. It's providing the defense. If you filed the papers, they would say that. Yes, Your Honor. Okay. Okay. But... But if you...   We have to take the case to the jury. We have to take the case to the jury. We have to take the case to the jury. We have to take the jury to the verdict and the light most favorable to the prevailing party. Why isn't there enough evidence between the owner's manual and the fact that Ryobi is on the... is on the tractor and to at least believe that Ryobi was the one that manufactured it or otherwise put it out there? I mean, why isn't there enough to support the jury's verdict that Ryobi should be held liable either through manufacture or design for what happened here if it wasn't argued as a centerpiece of your argument or if your theory of the case wasn't expressed, wasn't requested in an instruction? If it wasn't requested, if it wasn't instructed, why don't we just go back to the general jury verdict and say that, yes, that was enough. The two main pieces of evidence to me seem to be the name on the tractor and the owner's manual and that there was enough for the jury to say that either through manufacture or design Ryobi was responsible. Yes, Your Honor. I think there are three main points to address in response to your question. First, Your Honor is referring to the owner's manual, but the point that both the district court and the plaintiffs have ignored throughout and while we've explained it to them is that the owner's manual contains a warranty and it says the manufacturer warrants to the original consumer purchaser, limited warranty found at page 794 of the joint appendix, and it explains exactly who the manufacturer is. It's Electrolux Home Products, Inc., Electrolux which spun off later Husqvarna into a separate entity after this purchase. The plaintiff here, Mr. Wright, when he purchased this tractor, he got the owner's manual including this warranty telling him exactly who manufactured it. So there's no basis for any reliance by him on the trademark of Ryobi, a trademark which can be owned by or licensed to many different entities when he's got actual evidence. So only Ryobi got benefit or got in the way of substantial funds from the sale of these tractors, did it not? No, it did not, and there's no evidence. You mean it didn't receive a penny from the sale of any of these tractors? It wasn't involved in any way, shape, or form. Well, it sold this one for $1,000 or a little more than at the Home Depot to Mr. Wright. Excuse me? Mr. Wright paid over $1,000 for this thing and took it home with Ryobi on the side of it according to, as Judge Jackson explained, the word Ryobi printed on the side, the owner's manual with the name Ryobi printed on the top, and the receipt for a Ryobi lawn tractor. Because it's not Ryobi's license. It's not his trademark. There's no evidence whatsoever anywhere in the record that Ryobi Technologies, Inc. even owns the trademark to that name. Why would you expose yourself to a product's liability suit and get no money from the product? We haven't exposed ourself. The name came to be found on there by a trademark owned by someone else. There's no evidence in the record, but the Patent and Trademark Office shows that it's owned by a different entity altogether. So for this judgment to be taken against an entity that had no involvement, not as trademark licensor, designer, manufacturer, distributor, in any way, shape, or form, that is the only evidence in this record. Any assumptions that the plaintiff wants to make are completely unfounded, and they are undermined and contradicted by the expressed evidence. Why didn't you present evidence to the jury and argue the case? Because this is the plaintiff's theory of the case. They wanted to go in and say... Well, but you had a chance to put on evidence, too. You had a chance to present instructions. You had a chance to argue to the jury. Seems to me like you just waited and then tried to come up with a shell game to say, somebody else made it, and we're not the correct RYOBI or whatever. Your Honor, there is absolutely no shell game. We didn't put it out there. We didn't have a contract with them to build this thing. You could have presented that and put on evidence. I mean, some evidence you couldn't put on. He struck one of your witnesses because you concealed some evidence. But, you know, getting past that, you had a couple other experts, didn't you? There were some other witnesses who testified, Your Honor. I want to address the shell game comment because, again, the owner's manual tells them exactly who the manufacturer is. In addition, the plaintiff, after this incident, filed a report with the Consumer Product Safety Commission about this incident, about this tractor. Within a month of that, the manufacturer had responded to that in writing, saying this is our product. We stand behind our product. If this was a shell game, it was the worst shell game ever played because they told them throughout who the manufacturer was, exactly who the manufacturer was. I'm sorry, I'm sort of stuck on this apparent manufacturer doctrine. Under any theory of the apparent manufacturer doctrine, it really doesn't matter whether they were the manufacturer or not, right? I mean, your argument is that fine. If they're not the manufacturer, they at least have to be in the distribution chain. But, I mean, it's pretty clear that under Virginia law, based on those old cases, it doesn't really matter if they were the manufacturer or not. So I don't understand why it matters so much to you that the manual, you believe, put the plaintiffs on notice that they were not the manufacturer. Who cares? Because that goes to the issue of reliance, which is an element of the apparent manufacturer doctrine. I see my time is up, if I may address your question. Thank you. All right, thank you. Can you just finish this one thing about reliance? Yeah. Yes, thank you. Because it goes to reliance, and there are a number of cases that say that an entity may be able to rely on an entity putting out a product or having a product put out under its name, which doesn't fit the facts here to begin with, but not where the purchaser is actually told who manufactured it. In other words, there's no basis for reasonable reliance if the purchaser knows who manufactured it. And that's what the owner's manual did. It told them exactly who manufactured this. Did you try this case? No, Your Honor. I was at trial, but I did not try the case. Pardon? I attended trial, but I did not try the case. You were not the trial attorney? I was not. All right. Thank you. Any more questions? Thank you. Mr. Emmert, we're pleased to hear from you. Thank you, and I think I'm now in a position to say good afternoon. I'm Steve Emmert, and along with Rick Shapiro, I represent the decedents of state in this case. I'm going to give the second of the three speeches that appellate lawyers give, not the one that I've planned and not the devastating one I'll think of on the way down, I-64, but the one that occurs to me now in light of the questions that the Court has had for Mr. Wise. I'll begin by the one that Judge Harris asked, as to whether there is a Virginia precedent for how the state court would handle this kind of thing. Probably 95 percent of my practice is in the Supreme Court of Virginia, and I don't know of any that the Supreme Court has said. What I can tell you is that Swift & Company was a Virginia case that arose in the Western District of Virginia, and the source that the Court used in analyzing this case for that particular issue was the restatement of torts, which is very familiar to the Supreme Court of Virginia. In that case, the Swift & Company case did deal with the question of what a reasonable consumer, what a reasonable reader would conclude based upon looking at the totality of things. Which court is this now? This court. When this court decided the Swift & Company. You're talking about the 1936 Fourth Circuit case. Exactly. Yeah, that was, it really arose in Virginia. Yes, the original case was in the Western District of Virginia, but when this court decided it in the Swift & Company decision, you referred to, or your judicial ancestors referred to the restatement of torts, and that certainly is familiar to the Supreme Court of Virginia. Now, the conclusion that this court reached, certainly consistent with what I think Judge Jackson agreed with, was that a reasonable consumer looking at the big name Ryobi on the tractor, looking at the sales receipt, and seeing the owner's manual with a 130-point type, as John Hancock said, big enough for King George. How big is that? It's about this big, big enough for King George to read from London. It's probably about that, 100. What you're holding up there, the record is not going to show what you're. Right. Well, there is a copy of it in the record. All right. It is large. It is unmistakable. But a reasonable reader, a reasonable juror would have read that and concluded it. Mr. Wise told you that the warranty in the owner's manual actually identified who the manufacturer was. In doing that, he misspoke. The manufacturer's warranty, or the limited warranty, whether it's a manufacturer or not, is on page 794. And it does begin with limited warranty. And it says that this product is warranted. But it never says the manufacturer is. What it says at the bottom is, should you have any unanswered questions concerning this warranty, please contact, and it gives Electrolux Home Products and a different company in Canada. Now, companies are free to contract out their warranties. I know that. But there's nothing in this warranty that says the manufacturer is anybody other than who the apparent manufacturer is. I want to mention one other thing that relates to the question of whether this was apparently placed in commerce by Ryobi. On page 92 of the Joint Appendix, in comments by the trial lawyer for Ryobi, he makes the statement that Ryobi licensed the name so they could put it on a tractor. Now, we have more information than that. We have testimony from Mr. Christofferson in two places that we've cited in the brief where he says that Ryobi actually put this out. But let's assume for the purpose of argument that that's true. They simply licensed the use of the name. That would trigger the Swift & Company Doctrine because they've made it apparent to the purchaser, to anybody who reads it, that this is a Ryobi product. The jury was allowed to decide that. Is this during an argument to the court on a motion? It is. And this is Mr. Bode was lawyer for Ryobi? That's correct. If Your Honor had a question, I'll be happy to answer it. So since the time of Swift, right, it does seem that there's been a debate among state courts about whether this doctrine should apply to people who are not actually within the chain of distribution, whether it's enough that you've licensed the name. But you say we just don't know sort of where Virginia is on that question. I can tell you that I'm not aware of any decision that the Supreme Court has issued on that. And, candidly, I did not undertake to survey the states on this issue. Once I found the Fourth Circuit decision that I thought was on point, I figured this is probably going to be the answer to the question that we have. And it makes sense from a standpoint of a consumer. If you use your name, if you authorize the use of your name on a product, then an ordinary consumer is going to assume he's buying a Ryobi tractor. In Swift, the purchaser understood that they were buying a product made by Swift. It was a can of condensed milk. Under these circumstances, it was entirely appropriate for the jury to conclude, based on the totality of the evidence, that Ryobi was the manufacturer, that Ryobi was the right defendant. Did Ryobi recall the tractors with this kind of design? Was there a recall? I want to answer that question carefully, because I think Mr. Wise may give you a different answer if I'm not careful. Husqvarna reported it to the Consumer Product Safety Commission. They issued a voluntary replacement part, which has the – you've seen the photographs in the record of the two different kinds of nozzles with barbs. Did the voluntary – did the replacement part, was it meant to address the connection between the fuel tank and the fuel line? I believe that the answer to that question is yes. Okay. Did that come before the jury? I believe that the answer to that question is yes as well. They saw both barbs. They saw actually – I think they saw exemplars of the old barb that had – I thought as a general matter we frowned upon introducing evidence of recall and replacement parts before the jury because we don't want to discourage manufacturers from recalls and from if they think every time we recall it and every time we issue a replacement part, that's going to be before a jury in a product's liability suit. They're going to be reluctant to recall products that they should recall. So was there an evidentiary error there? First, I apologize for having interrupted you a moment ago. The answer is no, and it hasn't been raised in an issue in this appeal. There's nothing that's been briefed on the question of whether that was an error to tell the jury about it. The purpose for which it was introduced was to establish – I'm just asking you whether that should have been introduced, something like that. I'd hesitate to give you an answer standing here on the fly because I don't want to make a mistake that might mislead the court. I understand the purpose of not introducing evidence of subsequent remedial measures, for example. That's well-founded in public policy. But as I understand it right now – But your real answer is they haven't raised that as a question. I think that's the threshold answer. I don't think that I have to get past that if they don't make it an issue in the appeal because the briefs have framed the issues, I think, that are subject to being discussed today. But did you have a theory about why it might not have – why it was properly introduced because it wasn't really – It indicated their knowledge of the defect, and it was evidence of the existence of the defect. The previous design had, as we put it in there, ridges that were five one-thousandths of an inch thick. If you do the math, that's one-fifth of one millimeter. And the replacement part that was made available by Husqvarna but not disclosed to their purchasers was a far more aggressive barb that would hold the line in place. Now, the jury heard the evidence of the Indiana fire. It heard evidence of three other fires and was told by our expert witnesses that the source of the fire had to be the gas tank. It was a gravity tank, just had the nozzle at the very bottom of the tank. It was located underneath the driver's seat to the left of – just beside his left leg. Our fire expert, a fire chief with the wonderful nickname of Smokey Dyer, was able to tell the jury that given the nature of this fire, it was clear that it was a gasoline fire. The jury got two explanations for how this fire happened. One was it was a gasoline explosion, a gasoline fire. The other was that it was burning leaves that caused the fire – the tractor to catch fire. And he was able to tell the jury that's not a very likely consideration. All we have to do is give the jury enough of a preponderance of the evidence to make that the more likely explanation. Our theory of the case, the more likely explanation. Ryobi's theory here seems to be that we need to force-feed a jury with the ultimate conclusion based on what a jury – what an expert witness would say. That's not what Virginia law requires. The defendant got in a contributory negligence defense that Mr. Wright had misused the tractor to plow leaves. So they got that. But then the district court excluded evidence as to Mr. Wright's dementia, as I understand it, and leg problems. And someone 88 years old is not invariably demented. I know a great many people that age and older whose mental acuity is probably greater than my own. But would that have been – with the evidence of dementia and leg problems, would they have borne on the question or had some relevance to the question of misuse and contributory negligence? Would that have been relevant? The answer is no, not standing on their own. On this, I'm quite comfortable with what Virginia law is. Virginia law requires that to be a bar to recovery, negligence by the plaintiff has to actually contribute to the cause. And there was no evidence at any point that his dementia or any infirmities he may have had physically in any way caused this fire or caused him to suffer because of the fire. In order to be admissible as – But if there were dementia, and I have no idea whether there was or whether there was not, would that have increased the likelihood of misuse? And should they have been allowed to introduce that evidence? The answer to the question is no, unless they were able to show that somehow it contributed to the cause, that it actually caused this. That's the materials that we cited in the brief section on that. I think it's on page 18 or 19 of our brief in which we indicate from the Moses case, for example, Southwest Virginia Transit and the other cases that are cited there, in order to be contributory negligence as a bar, in order to present a jury issue as to whether it's a bar, it still has to actually contribute to the injury. And there was no evidence of that. All they wanted to say was this man was old. Maybe he could have, you know, fallen off the tractor. So there was no evidence that misuse contributed to the fire? Apart from the plowing of the leaves and there was an instruction on that? Correct. Okay. That's correct. If there was anything that caused it that actually contributed to it, then I would agree that that would be a jury issue. But all they did was ask the jury to conclude based upon the fact that he's 88 years old and had suffered previously from dementia, and that evidence did come in. That, therefore, must have contributed to it. Juries in Virginia, as elsewhere, are not allowed to speculate on such things. So I think I'm just trying to make sure that we've covered the things I believe we have that I wanted to say about this. Is there anything further? Why wasn't there an instruction on this apparent manufacturer doctrine? I'm sorry, why was there not? Yes, sir. Now, I didn't try the case, and I wasn't even present when it was tried, unlike Mr. Wise. So I can't give you an ideal answer. Well, you're all we have here. Answer the question. I'll do the best I can. We haven't been any better than you two. Well, you're very gracious, and I appreciate it. The answer to the question is most likely that no one presented one because the judge had previously ruled Ryobi's in the case. Ryobi knew about the prior fire, for example, and that there was evidence from Mr. Christofferson that Ryobi placed the matter into commerce. From that, it was a matter of did the jury believe that it was a Ryobi tractor or not? And that's a matter, I think, where I put in the brief a jury is not required to check its brain when it walks in the door. Whether there were instructions offered or not offered, it matters that decisions lawyers make all the time in the middle of trial. I'm happy to say that I don't do many of those trials. I'm glad to be out of it. I appreciate your kindness to me today and your interest in the issues of this case. Thank you. Mr. Wiles. Yes, thank you. If I may, just returning very quickly to one of Judge Harris's questions. As I said, we attempted to research this as well as we could. We have not done a cataloged survey, but there are a number of cases that we point out in our brief. The Fletcher case does talk about the requirement that a party be involved in the chain of production or distribution. The Hebel case, cited on page 24 of our brief, also talks about that, quote, nearly all of the cases imposing liability on this basis involve defendants who are retailers or distributors. But we've been round and round on this question. I just want to make sure I have your response to Judge King's question. That is, he did not, you did not request an instruction on who the manufacturer or designer really was. We did not. The plaintiff's theory was against a seller or manufacturer. They sued the seller, Home Depot, and then they sued Ryvie Technologies. We explained we are not the manufacturer. I mean, maybe the way I'm looking at it is simplistic, but if you did not request an instruction, maybe he wouldn't have given it to you because it probably wasn't your whole theory of the case. My guess is that your theory of the case was that there was misuse and that he used the lawn tractor to plow leaves and that that was where you put the emphasis. But in the absence of an instruction and not having that be your main theory of the case or anything like it, does it then just become a jury question? And we look at it just in light of whether the jury had before it evidence from which it could conclude that Ryvie was liable or was involved in the manufacture and design of this particular piece of machinery to such an extent that it was justifiable to hold it liable. Because that's just the way, very simply, that I'm coming at it because what Judge King said earlier sort of resonates with me, which is you don't want to let people play a kind of a shell game here through contracts and this and that and have somebody put their name on a tractor, on a lawn tractor, and have somebody have their name on the owner's manual and have a receipt and say, oh, no, it wasn't me. And I'm just wondering if we are opening ourselves up to what my colleague describes as a very sophisticated shell game in products liability litigation. No, Your Honor, and the reason is the parent manufacturer doctrine exists as almost an exception to the rule that only manufacturers and sellers may be sued. And it exists for good reason when one actually puts out a product as its own. Ryvie Technologies did not put this tractor out. It didn't sell it. It wasn't in the chain of distribution. It wasn't its name. They had a shared common name as part of the name, but in that way it's no different than the train case that we said in our brief, than the Dow case that we said in our brief, than the Goodyear case that we said in our brief. Many companies can have a part of a name in there. Ryvie Technologies is not affiliated with Ryvie Limited, who actually owns the trademark. And you made a motion for summary judgment, judgment as a matter of law? We did. Okay, and you went through all this in your summary judgment motion? We explained that Ryvie Technologies had no involvement in any way, shape, or form. The court at one point. Excuse me, you asked for summary judgment on that basis? Yes. And what did the district court say in its summary judgment ruling? The court first said that it was unaware, first said, and chastised trial counsel for not raising this issue earlier. Counsel explained, we have explained it to them numerous times, we're not the manufacturer. Then the court said that it was unaware that there was a summary judgment motion pending. And then it declined to kick or let Ryvie Technologies out of the case. I believe it said something like Ryvie's in the case, but there was no analysis, there was no memorandum opinion given whatsoever, and there was no acknowledgement of the evidence we put before the court. We addressed this issue post-trial as well. The problem here is that. This was done during the trial? Yeah. Which aspect are you talking about, Your Honor? The motion that you just were discussing. That was several months before trial. It was August. Before trial. August of 2014. The trial was in January of 2015. In addition, there were discovery responses given, an affidavit given, and the plaintiff acknowledges knowing even before they filed suit that they knew that the manufacturer was somebody else because they had the recall for 2006, which explained the relationship between Husqvarna and Electrolux, and they also had the owner's manual. For those reasons, we ask the court reverse and render judgment or in the alternative grant a new trial for the reasons stated in our brief, and I thank you. All right. We thank you, and we will come down and we will adjourn court and then come down in Greek Council. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Robert B. King, Pamela A. Harris